**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LISA ANN DOLPH-HOSTETTER,

          Petitioner,

v.                                 Case Number: 2:11-CV-11177

MILLICENT WARREN,

          Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Lisa Ann Dolph-Hostetter filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Petitioner, currently incarcerated at the Huron

Valley Correctional Facility in Ypsilanti, Michigan, challenges her conviction for second-

degree murder.  She argues that she was denied the right to confrontation, her

sentencing guidelines range was misscored, her sentence was disproportionate, and

her rights under the *Ex Post Facto* Clause were violated.  Respondent has filed a

response arguing that the claims are procedurally defaulted and/or meritless.  For the

reasons set forth, the court denies the petition.

**I. BACKGROUND**

**A.  Factual History**

With the exception of the confrontation, and to some extent the *Ex Post Facto*

claim, the facts have no real bearing on the determination of the grounds argued by

Petitioner.  It is therefore not necessary to explain in detail the unusually sordid and

intricately intertwined relationships that provide the backdrop for Petitioner's conviction

in the murder of one Carol Knepp. But some elaboration is appropriate.

It seems that there was a "love triangle," at one corner of which Carol Knepp resided. Carol's husband, Gary Knepp, and Petitioner occupied the other two. Petitioner and Gary[1] had been engaged in extramarital activities, according to the prosecution, and Petitioner was determined to be rid of Carol. It came to pass that Carol was shot while driving her car in St. Joseph County on February 19, 1996, and following a nearly four-year investigation, three people were arrested in connection with the murder: Petitioner, her ex-husband Ronald Hostetter, and Dale Alan Smith, Petitioner's brother-in-law.

The prosecution's theory was that Petitioner arranged to have Carol killed—and assisted in the deed as a lookout—so that she could maintain her relationship with Gary.

Ronald Hostetter pleaded guilty to second-degree murder in exchange for agreeing to cooperate against Petitioner and Smith, and testified that Petitioner asked him to kill Carol. Petitioner insisted that the murder had to be accomplished on a particular night because Carol's work schedule had changed. Petitioner, looking out for Carol on the night of the murder, informed Hostetter and Smith via CB radio when Carol had left her home. Hostetter and Smith located and caught up with Carol's vehicle. They pulled alongside, and Smith shot Carol with a shotgun while the vehicles were parallel to one another.

Other witnesses included Jerry Trump. Petitioner claimed to Trump that she was

---

[1]In order to avoid confusion, the court refers to Gary and Carol Knepp by their first names.

having problems with Carol, including Carol threatening her and her family because Carol had found a love letter Petitioner sent to Gary. After Carol was murdered, Petitioner asked Trump to destroy that letter.

Rosalie Bowersox, Gary's mother, was also presented at trial. She had been a witness at a coroner's inquest convened to investigate the murder in October 1996, but in the meanwhile had suffered several strokes. At trial, she was unable to recall having testified at the inquest or any conversations she had with Petitioner about Carol and Gary, or with Gary about Carol or Petitioner. The trial court permitted the prosecutor to read portions of the inquest transcript. There, Bowersox had testified that on a day in February, 1996, she had dinner with Gary and Carol, during which Carol said she was changing her work schedule to the third shift. Two days later, Petitioner visited Bowersox and said she had been unable to reach Gary by phone. Bowersox told Petitioner that the number had been changed, and that Carol was switching to the third shift at work, so would likely be leaving the house around 8:00 or 8:30 p.m. Petitioner told Bowersox that she was in love with Gary and hoped that someday they would be able to have a life together. That conversation happened on February 17, the night Carol was shot.

Another witness, Jean-Anne Benton Crick, was Petitioner's younger sister. Her husband, Robert, was a victim of crime in which Gary was implicated. With Gary identified as a suspect—but before he was convicted (attempted murder, Crick thought)—Petitioner said to Crick that if "Rob had Gary put away, taken away, she would have Rob taken care of just like she did Carol." (Tr., 2/24/05 at 62–63.) Crick also said that in a phone conversation shortly after Petitioner had been released from

3

custody while the lengthy investigation went on, Petitioner confronted her about talking to the detective, and said, "if you testify against me, you're as good as Carol." (*Id.*)

Sherry Smithers, an admitted drug addict with at least four prior convictions, testified that when she was incarcerated with Petitioner in the Wayne County Jail in 2000 and 2001, she assisted Petitioner in mailing love letters to Gary.

Another witness, Lorraine Watts, was married to Gary preceding his marriage to Carol.  She had divorced him upon learning he was having an affair with Carol.  Watts herself admitted to having an affair with Ron Hostetter, Petitioner's husband, in the summer and fall of 1995.  She testified that, before the murder, Petitioner had asked her if she knew of anyone who could eliminate her problem with Carol.

The defense presented five witnesses:  Richard Dolph (Petitioner's father), Janice Dolph (Petitioner's mother), Richard Dolph-Hostetter (Petitioner's and Ron Hostetter's son), Bonnie Dolph (Petitioner's daughter), and Rachel Hinojiona (who lived in the same apartment complex as Watts).

Petitioner's parents and children testified that Petitioner was at her parents' home on the night of the shooting between 8:15 and 9:00 p.m.  Richard Dolph testified that, in the summer of 1995, he heard Hostetter and Watts discussing hiring a hit man.  Dolph testified that in the fall of 1995, she heard Watts say she knew where to get a hit man.  Richard Dolph-Hostetter testified that Hostetter admitted to being involved with Carol's death.  Dolph-Hostetter testified that his father said that Dale Smith and Watts were also involved.

Petitioner did not testify in her own defense.

## B.  Procedural History

4

Petitioner was charged with conspiracy to commit open murder and first-degree murder in St. Joseph County Circuit Court.  At the time scheduled for Petitioner's preliminary examination, the prosecutor informed the court he intended to call Ronald Hostetter as a witness against Petitioner after October 1, 2000, the effective date of an amendment to the marital-communication privilege.  Prior to the amendment, the relevant statute barred questions to a person who has been married previously regarding any communication between that person and his or her former spouse during the marriage.  The amendment changed the law to provide that the decision whether to testify about marital communications lies with the person testifying.  Mich. Comp. Laws § 600.2162(2).  Hostetter testified at Petitioner's preliminary examination.  Following her arraignment in circuit court, Petitioner filed a motion to exclude Hostetter's testimony on the ground that its admission violated the *Ex Post Facto* Clause.  The circuit court granted the motion.  The State filed an interlocutory leave to appeal in the Michigan Court of Appeals.

In lieu of granting leave to appeal, the Michigan Court of Appeals reversed the circuit court as to those parts of Hostetter's testimony that recounted communications between Petitioner and Hostetter when others were present because those were not covered by the marital-communication privilege.  *People v. Dolph-Hostetter*, No. 236246 (Mich. Ct. App. Feb. 21, 2001).  The Michigan Court of Appeals did not address the *ex post facto* claim.

The State appealed to the Michigan Supreme Court.  The Michigan Supreme Court, in lieu of granting leave to appeal, remanded the case to the Michigan Court of Appeals for consideration as on leave granted and directed the Court of Appeals to

5

address the *ex post facto* issue in light of *Carmell v. Texas*, 529 U.S. 513 (2000). *People v. Dolph-Hostetter*, 466 Mich. 883 (Mich. June 24, 2002).

On remand, the Michigan Court of Appeals held that applying the amended marital communications statute to Petitioner's husband did not violate the *Ex Post Facto* Clause. *People v. Dolph-Hostetter*, 256 Mich. App. 587 (Mich. Ct. App. 2003). The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Dolph-Hostetter*, 469 Mich. 1004 (Mich. Jan. 29, 2004).

Petitioner was convicted by a jury in St. Joseph County Circuit Court of conspiracy to commit second-degree murder and second-degree murder. On April 22, 2005, she was sentenced to 25 to 50 years in prison for each conviction, to be served concurrently.

Petitioner filed a motion for new trial and to vacate the conspiracy conviction in the trial court. The trial court denied the motion.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

    I.       Over defense objections the trial judge erroneously admitted hearsay and violated Lisa Dolph's confrontation rights and *Crawford* by allowing the prosecution to present a crucial part of its case through the testimony at the coroner's inquest by Rosalie Bowersox, although Bowersox could not be cross-examined at trial because in the years after the inquest she had three strokes and had no memory of what happened or what she had said in 1996.

    II.     Over defense objection the trial judge improperly granted the prosecution motion to prevent the defense from cross-examining Sherry Smithers on being a drug informer, which violated the constitutional right to confrontation and the rules of evidence because the suppression prevented defendant Lisa Dolph from showing that Smithers had a motive and bias to lie

and curry favor with the prosecution and police in testifying against Dolph.

III.   Where Lisa Dolph was found guilty of two counts of second-degree murder for one death, did the two convictions violated her due process and double jeopardy protections? Should one conviction be vacated and should she be resentenced for the remaining count of second-degree murder?

IV.   Is conspiracy to commit second-degree murder a nonexistent offense?  And should defendant Lisa Dolph's conviction and sentence for that offense be vacated and should she be resentenced for the remaining count of second-degree murder?

V.   Was defense counsel ineffective and did he deny defendant Lisa Dolph a fair trial and sentence because counsel failed to object to the instructions, verdict, and sentence for conspiracy to commit second-degree murder?

The Michigan Court of Appeals affirmed Petitioner's second-degree murder conviction, vacated the conspiracy conviction, and remanded for resentencing.  *People v. Dolph-Hostetter*, No. 262858, 2007 WL 981595 (Mich. Ct. App. Apr. 3, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising only those issues on which she did not prevail in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal.  *People v. Dolph-Hostetter*, 480 Mich. 901 (Mich. 2007).

On remand, the trial court sentenced Petitioner to the same sentence previously received, 25 to 50 years' in prison.  Petitioner appealed the sentence to the Michigan Court of Appeals on the grounds that the sentencing guideline range was misscored and the sentence was disproportionate.  The Michigan Court of Appeals affirmed the sentence.  *People v. Dolph-Hostetter*, No. 284799, 2009 WL 3400942 (Mich. Ct. App. Oct. 22, 2009).  The Michigan Supreme Court denied Petitioner's application for leave

7

to appeal. *People v. Dolph-Hostetter*, No. 140197, 485 Mich. 1129 (Mich. March 29, 2010).

During the pendency of her resentencing proceedings, Petitioner filed a motion for relief from judgment in the state court raising eight claims for relief. The trial court denied the motion. Petitioner did not seek leave to appeal the trial court's decision.

Petitioner then filed the pending habeas petition. She raises the following claims:

I.   Over defense objections the trial judge erroneously admitted hearsay and violated Lisa Dolph's confrontation rights and *Crawford* by allowing the prosecution to present a crucial part of its case through the testimony at the coroner's inquest by Rosalie Bowersox, although Bowersox could not be cross-examined at trial because in the years after the inquest she had three strokes and had no memory of what happened or what she had said in 1996.

II.  Over defense objection, the trial judge improperly granted the prosecution motion to prevent the defense from cross-examining Sherry Smithers on being a drug informer, which violated the constitutional right to confrontation and the rules of evidence because the suppression prevented defendant Lisa Dolph from showing that Smithers had a motive and bias to lie and curry favor with the prosecution and police in testifying against Dolph.

III. Defendant-appellant is entitled to resentencing when the sentencing guidelines range was misscored and when the sentence was disproportionate.

IV.  The issue before the court is whether the People should be able to use the amended statute, a statute not in effect during the alleged criminal activity, not in effect on the date the crime was charged and not in effect at the commencement of the preliminary examination in this case, retroactively against Lisa Dolph, or if doing so violates the *Ex Post Facto* Clause of the United States and Michigan Constitutions. Alternatively, the statutory amendment to M.C.L. 600.2162 is unconstitutional.

Respondent filed an answer in opposition arguing that the claims are meritless.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21

9

(citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

10

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

## III. DISCUSSION

### A. Admission of Rosalie Bowersox's Inquest Testimony

Petitioner first argues that admission of Rosalie Bowersox's testimony at the coroner's inquest violated her right to confrontation because Bowersox had no substantive recollection of her testimony and, therefore, could not be cross-examined at trial.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Out-of-court statements that are testimonial are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford,* 541 U.S. at 59, n.9. Petitioner argues that Bowersox's memory loss rendered her "unavailable" for cross-examination.

In *United States v. Owens*, 484 U.S. 554 (1998), the Supreme Court considered the admission of an out-of-court statement by a victim-witness who testified at trial and

11

remembered making the statement but did not remember its substance.  The Court held

that the Sixth Amendment "guarantees only an *opportunity* for effective cross-

examination, not cross-examination that is effective in whatever way, and to whatever

extent, the defense might wish."  *Id.* at 559 (quotation omitted).  The Clause "includes

no guarantees that every witness . . . . will refrain from giving testimony that is marred

by forgetfulness, confusion, or evasion."  *Id.* at 558.  "[T]he Confrontation Clause is

generally satisfied when the defense is given a full and fair opportunity to probe and

expose these infirmities through cross-examination, thereby calling to the attention of

the fact finder the reasons for giving scan weight to the witness' testimony."  *Id.*

(quotations omitted).

        In *United States v. Mayberry*, 540 F.3d 506 (6th Cir. 2008), the Sixth Circuit

addressed a claimed Confrontation Clause violation in a context similar to that

presented in this case.  In *Mayberry*, an informant testified to a grand jury regarding the

defendant's plans to perpetrate additional robberies.  *Id.* at 511–12.  At trial, however,

the informant could not recall numerous facts he had revealed to the grand jury.  The

prosecution read excerpts of the informant's grand jury testimony to the informant, who

continued to claim no recollection of the statements, and the trial judge allowed the prior

testimony to be admitted as substantive evidence.  *Id.*  The Sixth Circuit held that

admission of the informant's grand jury testimony did not violate the Confrontation

Clause because, as the Supreme Court held in *Crawford,* "'when the declarant appears

for cross-examination at trial, the Confrontation Clause places no constraints at all on

the use of his prior testimonial statements.'"  *Id.*  (quoting *Crawford*, 541 U.S. at 36).

*See also Yanez v. Minnesota*, 562 F.3d 958, 964 (8th Cir. 2009) ("A witness's inability to

12

recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the out-of-court statement was given does not have Sixth Amendment consequence."); *United States v. Bliss*, 188 F. App'x. 13 (2d Cir.2006) (holding that because witness was available for cross-examination at trial regarding his grand jury testimony there was no Confrontation Clause violation notwithstanding witness's loss of memory).

The Michigan Court of Appeals reviewed the Supreme Court's decisions in *Crawford* and *Owens.* The court of appeals held that Bowersox's memory loss did not render her unavailable for cross-examination because she actually appeared for cross-examination at trial. *Dolph-Hostetter,* 2007 WL 981595 at *2. This holding is in accordance with *Crawford* and *Owens.* Therefore, the court denies habeas relief on this claim.

### B.  Limitations on Cross-Examination of Witness Sherry Smithers

In her second habeas claim, Petitioner argues that the trial court violated her right of confrontation by limiting her cross-examination of Sherry Smithers. The prosecution filed a motion in limine seeking to preclude cross-examination of Smithers about her role as a police informant in other cases. The prosecution argued that exposing Smithers's status as an informant could place her at risk of serious physical harm. The defense argued such information was needed to show bias and motive to lie. The trial court granted the motion, but allowed cross-examination on many other topics: "You can bring out the drug habit, the convictions, the jail, the fact that she's trying to curry favor, the fact that she may have done so in the past." (Tr., 2/22/05 at 198.)

13

The right of confrontation encompasses the right of cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."). But, the right of cross-examination is not absolute. Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.*, citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987).

The Michigan Court of Appeals found no error. The court first noted that the defense did not challenge or dispute the assertion that revealing Smithers's work as an informant could endanger her. The court stated that the limitation placed on cross-examination of Smithers was reasonable and left open several subjects of cross-examination relevant to Smithers's credibility, thereby allowing Petitioner a reasonable opportunity to test Smithers's testimony and credibility. *Dolph-Hostetter*, 2007 WL 981595 at *2.

The trial court's limitation was narrow and imposed to protect the witness's safety. It did not substantially impair Petitioner's ability to question Smithers's credibility or expose her criminal history and motives for testifying. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir.2006) ( "Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to

14

assess the defense theory.") (quotation omitted).  The Michigan Court of Appeals's

holding that Petitioner's constitutional rights were not violated was reasonable in its

application of and consistent with federal law.  Accordingly, Petitioner is not entitled to

relief on this ground.

### C.  Sentencing Claims

Petitioner raises two sentencing-related claims:  the trial court misscored offense

variables 3 and 9, and her sentence is disproportionate.

It is well-established that "'federal habeas corpus relief does not lie for errors of

state law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497

U.S. 764, 780 (1990)).  Petitioner's argument that the state court erred in scoring her

sentencing guidelines is based solely on the state court's interpretation of state law.  It

does not implicate any federal rights.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A]

state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v.*

*Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state

law.").  "[A] claim that the trial court mis-scored offense variables in determining the

state sentencing guidelines is not cognizable on habeas corpus review."  *See Adams v.*

*Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Coleman v. Curtin*, 425 F.

App'x 483, 484–85 (6th Cir. 2011).  Therefore, habeas corpus relief is not available.

Petitioner also claims that her sentence violates the constitutional ban on cruel

and unusual punishment because it was disproportionate to her crimes.  There exists no

constitutional right to strict proportionality in sentencing.  *Harmelin v. Michigan*, 501 U.S.

957, 965 (1991).  However, the Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime."  *Id.* at 1001 (Kennedy, J. concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288, 303 (1983)).  The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'."  *United States v. Organek*, 65 F.3d 60, 62–63 (6th Cir. 1995); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982) ("[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotations omitted).  Petitioner's sentence did not exceed the statutory maximum for second-degree murder (life).  *See* Mich. Comp. Laws § 750.317. Accordingly, she fails to prove an Eighth Amendment violation.

## C.  *Ex Post Facto* Clause

Finally, Petitioner argues that application of Michigan's amended marital-communications privilege law to her case violated the United States and Michigan Constitutions' *Ex Post Facto* Clauses.  Prior to October 1, 2000, Michigan's marital-communications privilege, Mich. Comp. Laws § 600.2162, provided that a married person or a person that had been married previously could not be examined regarding any communications made between that person and his/her spouse or former spouse during the marriage.  In 2000, the statute was amended to permit testimony in a criminal prosecution regarding prior communications between spouses or former spouses with the consent of the person being examined.

In *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798), Justice Chase identified the following four categories of laws implicated by the *Ex Post Facto* Clause:

16

> 1st.  Every law that makes an action done before the passing of the law,
> and which was *innocent* when done, criminal; and punishes such action.
> 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was,
> when committed.  3d. Every law that *changes the punishment*, and inflicts
> a *greater punishment*, than the law annexed to the crime, when
> committed.  4th.  Every law that alters the *legal* rules of *evidence*, and
> receives less, or different, testimony, than the law required at the time of
> the commission of the offence, *in order to convict the offender*.

*Calder*, 3 Dall. at 390 (emphasis in original), quoted with approval in *Carmell v. Texas*,

529 U.S. 513, 522 (2000).  Petitioner argues that application of the amended statute to

his case implicates the fourth category of *ex post facto* protection.

The Michigan Court of Appeals rejected Petitioner's argument, stating:

> *Carmell* and the longstanding precepts of the cases cited therein indicate that
> the application of the amendment at issue in this case to marital
> communications occurring before October 1, 2000, does not violate the *Ex
> Post Facto* Clause of the United States Constitution.  Moreover, because the
> Ex Post Facto Clause of the Michigan Constitution is "not interpreted more
> expansively than its federal counterpart," *see Attorney Gen. v. Pub. Service
> Comm.*, 249 Mich.App. 424, 434, 642 N.W.2d 691 (2002), the retroactive
> application of the amendment does not violate the *Ex Post Facto* Clause of
> the Michigan Constitution.  The amended statute only renders witnesses
> competent to testify, if they choose, or permits the admission of evidence that
> previously was inadmissible.  It does not make criminal any prior act not
> criminal when done; it does not increase the degree, severity or nature of any
> crime committed before its passage; it does not increase punishment for
> anything done before its adoption; and it does not lessen the amount or
> quantum of evidence necessary to obtain a conviction when the crime was
> committed.  *See Hopt, supra* at 589, 4 S. Ct. 202.  It does not fall within
> Justice Chase's fourth category [] of an *ex post facto* law that "alters the legal
> rules of evidence, and receives less, or different, testimony, than the law
> required at the time of the commission of the offence [sic], in order to convict
> the offender," *Calder, supra* at 390, 3 U.S. 386, because it does not modify
> the evidence necessary to obtain a conviction.  *Carmell, supra* at 551–552,
> 120 S.Ct. 1620.

*Dolph-Hostetter*, 256 Mich. App. at 260–61.

The Supreme Court has held that "[s]tatutes which simply enlarge the class of

persons who may be competent to testify in criminal cases" do not offend the *ex post*

17

*facto* prohibition. *Hopt v. Territory of Utah*, 110 U.S. 574, 589 (1884); cited with

approval *Carmell v. Texas*, 529 U.S. 513, 543 (2000). The Court reasoned that such

statutes do not offend the *ex post facto* prohibition because:

> [T]hey do not attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.
>
> . . . Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilty may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged.

*Hopt*, 110 U.S. at 589–90.

In *Carmell v. Texas*, 529 U.S. 513 (2000), the Supreme Court considered

whether application of an amended Texas statute violated the *Ex Post Facto* Clause

where the amended statute permitted conviction of certain sexual offenses based solely

upon non-corroborated testimony of minor victims. Prior to the amendment, the

testimony of minors over the age of thirteen could not support a conviction unless the

testimony was corroborated, or the victim had informed another person within six

months of the offense. In *Carmell*, the petitioner had been convicted of fifteen counts of

18

criminal sexual conduct.  The petitioner contested four of those convictions because the acts were committed prior to the amendment's enactment, when the victim was a minor over the age of thirteen, and were based upon her uncorroborated testimony.  The Court held that the statute could not be applied to crimes committed before its enactment because it was a law that "alter[ed] the legal rules of evidence, and receives less, or different, testimony than the law required at the time of the commission of the offence, in order to convict the offender."  *Id.* at 530.  Under the law in effect at the time the acts were committed, the petitioner was entitled to a judgment of acquittal because the prosecutor produced only the victim's testimony.  The amended law, thus, "changed the quantum of evidence necessary to sustain a conviction."  *Id.*  "Requiring only the victim's testimony to convict, rather than the victim's testimony plus other corroborating evidence is surely less testimony required to convict."  *Id.*  The amended statute, therefore, rendered what had been legally insufficient evidence to support the conviction, legally sufficient.

In contrast, the amendment to Michigan's spousal privilege law does not change the quantum of evidence necessary to sustain a conviction.  It simply alters the class of persons eligible to testify.  As such, its application to Petitioner's case did not violate the *Ex Post Facto* Clause.  *Accord Palmer v. Clarke*, 408 F.3d 423 (8th Cir. 2005) (holding that Nebraska's marital privilege law allowing defendant's wife to testify at re-trial did not violate *Ex Post Facto* Clause because it did not change the legal sufficiency of the evidence standard); *Muscio v. New Jersey*, No. 02-1892 (DMC), 2005 WL 2600256 (D. N.J. Oct. 13, 2005) (holding that amendment of marital communication privilege, between petitioner's first and second trial, to permit disclosure of marital communication

19

when either spouse consents to disclosure was not an *ex post facto* violation because changes in witness competency statutes do not run afoul of the *Ex Post Facto* Clause).

Finally, Petitioner's claim that application of the amended statute violated the Michigan Constitution is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 67–68.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the court concludes that reasonable jurists would not debate the court's assessment of Petitioner's habeas claims.  Therefore, the court denies a certificate of appealability.

## V.  CONCLUSION

The decision of the Michigan Court of Appeals was not contrary to clearly established federal law, an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.  Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. #1] is DENIED.

20

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 27, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, November 27, 2013, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-11177.DOLPH-HOSTETTER.deny habeas.jac.RHC.wpd